MT

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMY GREGORY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 12 CV 7351 |
| | ) | |
| v. | ) | Hon. Charles R. Norgle |
| | ) | |
| ARTHUR B. ADLER & ASSOCIATES, LTD., | ) ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff's Motion for Attorney's Fees and Costs [109] is granted in part and denied and part.

## STATEMENT

Before the Court is Plaintiff's motion for attorney's fees and costs. For the following reasons, the motion is granted in part and denied in part.

In September of 2012, Plaintiff Amy Gregory ("Plaintiff") filed a single-count complaint against two defendants—Regional Adjustment Bureau, Inc. and Arthur B. Adler & Associates, Ltd. ("Defendant")—alleging a violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, ("FDCPA"). Neither defendant filed a motion to dismiss; instead both filed answers to Plaintiff's Complaint. On March 8, 2013, the Court set an expedited trial schedule. That same day, Defendant provided Plaintiff with an Offer of Judgment in the amount of $1,500, inclusive of costs and fees. Plaintiff rejected Defendant's offer. Four months later Plaintiff voluntarily dismissed its complaint against Regional Adjustment Bureau, Inc.

Plaintiff filed a motion for summary judgment in 2013, which was denied. After the Court held a status hearing on October 10, 2014, Plaintiff lost interest in her case and took no action until after the Court dismissed the case on August 20, 2015, for want of prosecution under Local Rule 41.1. Plaintiff persuaded the Court to vacate the dismissal and the Court proceeded to set the matter for trial on April 5, 2016. After a two-day trial, the jury returned a verdict in favor of Plaintiff. Because there was an issue with the jury verdict, Defendant filed a motion for new trial. The Court held oral arguments on Defendant's motion on April 7, 2016, which the Court denied. Plaintiff was not required to, and did not, file a written response to Defendant's motion for a new trial. The Court entered judgment for $1,000 in favor of Plaintiff. Neither party appealed the judgment. Plaintiff now requests $118,518.30 in attorneys' fees, plus $643.30 in costs. Defendant filed an objection, albeit meager and without legal citation, arguing that Plaintiff's attorneys expended more hours than reasonably necessary.

A debt collector found liable for violating the FDCPA owes the plaintiff for "the costs of the action, together with a reasonable attorney's fee as determined by the Court." 15 U.S.C. § 1692k. To begin calculating a reasonable attorney fee, the Supreme Court has set forth a

general formula—an attorney's reasonable fee multiplied by hours reasonably expended. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). This formula is "an objective basis on which to make an initial estimate"; it is not based on an attorney's actual fees and it is not a final calculation. Id.

At first glance, an $118,518.30 legal bill on a $1,000 judgment is not reasonable. However, the Seventh Circuit has reasoned that "[i]n order to encourage able counsel to undertake FDCPA cases, as congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases." Tolentino v. Friedman, 46 F.3d 645, 652 (7th Cir. 1995). Citing Hensley, the Seventh Circuit enumerated twelve factors for a court to consider when determining a reasonable fee. Id. Yet "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Farrar v. Hobby, 506 U.S. 103, 114 (1992) (quoting Hensley, 461 U.S. at 436). The Court has taken into consideration all twelve factors and finds that three factors severely undermine Plaintiff's request: (1) the time and labor required to prosecute this case; (2) the novelty and difficulty of the legal question presented in this case; and (3) the amount of money involved and the results ultimately obtained.

To determine the time and labor required to prosecute the case, the Court should take into account the reasonableness of Defendant's defensive position. See, e.g., Kirtsaeng v. John Wiley & Sons, Inc., 136 S. Ct. 1979, 1987 (2016) ("In deciding any case, a judge cannot help but consider the strength and weaknesses of each side's arguments."). From the start, Defendant has not gathered the cavalry and mounted a rigorous defense to Plaintiff's claim. Defendant did not file a motion to dismiss. Defendant did not file a motion for summary judgment, Plaintiff did. To prepare for trial Plaintiff did not take any depositions; only written interrogatories were exchanged between the parties. At trial, Defendant was represented by a single attorney, while Plaintiff had a full legal team with multiple attorneys and an IT specialist. The lopsided approach to this litigation continues today; Plaintiff filed an extensively researched motion for fees that totals nineteen pages in length with an additional 141 pages of exhibits; whereas, Defendant objected with a page and a half response that is void of a single citation to any law or a single exhibit. Then Plaintiff filed a thirteen page reply with seventeen pages of exhibits. Additionally, Plaintiff presented a motion requesting a ruling from the Court on the motion for fees, as well as, a request to provide supplemental authority. The Court provides this detailed explanation for why it rejects Plaintiff's notion that "[t]his case was vigorously litigated by the parties since 2012, and the hours expended are reasonable given the number of complex issues involved." Pl.'s Mot. for Att'ys' Fees and Costs at 16. Defendant's lackluster defense is not to be condoned, but it should be considered in determining the time and labor necessary for Plaintiff to prosecute this case.

The questions in this case were neither novel nor difficult. The Court rejects Plaintiff's contention that this is a novel case. According to the Court's electronic case tracking software, since Plaintiff filed her Complaint there have been 104 cases alleging violations of the FDCPA before Judge Norgle alone. That is over twenty-five FDCPA cases before a single judge per year. That does not account for the number of FDCPA claims filed before the other thirty-two district judges in the Northern District of Illinois. Plaintiff's case is far from novel. The Court also finds that the legal questions in this single-count, single-defendant case were not difficult.

Turning now to the amount of money involved and the results obtained, this is where Plaintiff's request becomes absurd. The FDCPA limits damages to actual damages, plus a $1,000 maximum statutory penalty, plus an attorney's fee and costs. See 15 U.S.C. § 1692k(a). Plaintiff

2

did not prove any actual damages at trial—zero. On the verdict form, she did not even ask the jury to decide an amount of actual damages. The jury wanted to award her $10,000 for the harm she had suffered, but the Court entered judgment for the statutory maximum of $1,000. On April 7, 2016, Plaintiff achieved a result inferior to the offer she received on March 8, 2013—over three and a half years earlier. The substantive reason for turning down Defendant's Rule 68 offer for $1,500 was because Defendant "offered a paltry $100 in attorney fees." Pl.'s Mot. for Att'ys' Fees and Costs at 16. While well below Plaintiff's attorneys' going rates, the offered amount was ten percent of the maximum award sought in this case. Furthermore, an acceptance of the offer would have provided a quick resolution for Ms. Gregory and freed up the attorneys to work on other matters. Instead, this case took years longer than necessary to obtain a judgment below Defendant's Offer of Judgment. And during that unwarranted three and a half year timespan the fees continued to churn. As the motion signed and submitted by all three of Plaintiff's attorneys makes clear, the focus of this case has not been about earning a fair remedy for Ms. Gregory, but from the beginning of this case, it has been about earning attorney fees. Nevertheless, Plaintiff was successful at trial and the statute mandates that her attorneys be compensated.

"The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." Fox v. Vice, 131 S.Ct. 2205, 2216 (2011). Given the aforementioned discussion, the Court reduces Plaintiff's fee request by twenty percent. Defendant has not challenged the costs incurred by Plaintiff and the Court sees no reason to doubt their accuracy. Therefore, the Court awards $94,814.64 in attorneys' fees and $643.30 in costs to Plaintiff. Any additional fees for the briefing of this motion are not granted.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: October 3, 2016